UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **ERIC KAEGI,** | : | CASE NO. 1:10-CV-02282 |
| | : | |
| Plaintiff, | : | Judge Patricia A. Gaughan |
| | : | |
| v. | : | |
| | : | |
| **MERCANTILE ADJUSTMENT BUREAU, LLC,** | : | |
| | : | |
| Defendant. | : | |

### DEFENDANT MERCANTILE ADJUSTMENT BUREAU, LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS SUMMARY JUDGMENT MOTION

**I.  INTRODUCTION**

Plaintiff's Brief in Opposition to Mercantile Adjustment Bureau, LLC's ("Mercantile") Summary Judgment Motion fails to demonstrate that a genuine issue of material fact exists and that Mercantile is not entitled to judgment as a matter of law. The factual record demonstrates that plaintiff's claims lack legal merit and as a result, must be dismissed. Accordingly, Mercantile's Summary Judgment Motion should be granted.

**II.  LAW AND ARGUMENT**

It is telling that plaintiff only now has withdrawn his claims that Mercantile violated Section 1692(g).[1] (*See* Doc. 13 at 21 ("Plaintiff voluntarily withdraws his Section 1692(g) claim.") The same result should obtain for all plaintiff's claims. As explained in its moving papers (Doc. 11) and further below, there are no genuine disputes

---

[1] Mercantile respectfully requests its fees associated with briefing this claim in the Court's discretion. The FDCPA allows a debt collector to recover its reasonable attorney's fees and costs: "[o]n a finding by the court that an action under [the FDCPA] was brought in bad faith and for the purpose of harassment. . . " *See* 15 U.S.C. § 1692k(a)(3). The collector must prevail on the merits. *See e.g., Boyce v. Computer Credit, Inc.*, 1997 U.S. Dist. LEXIS 14879, *3 (S. D. Ohio 1997). Here, Mercantile was forced to demonstrate the merits of its defense even though, as conceded by plaintiff, the claim had no merit.

concerning material facts that preclude summary judgment in Mercantile's favor. Moreover, Mercantile is entitled to judgment as a matter of law because of the *bona fide* error defense.

### A. Mercantile is Entitled to Prevail on the *Bona Fide* Error Defense.

Irrespective of any alleged factual disputes regarding the nature of the communications between Mercantile and plaintiff, Mercantile is protected from liability in this case by the FDCPA's "*bona fide* error" defense. Plaintiff cannot dispute that Mercantile had in place reasonable preventive procedures. As a result, plaintiff tries to criticize Mercantile's procedures as overly "general." The fact of the matter is two fold. First, plaintiff has not and cannot dispute the Declaration of Lance Dellamea ("Dellamea Decl.").[2] Second, the Dellamea Declaration clearly establishes that: (a) Mercantile's violation of the law, if any, was unintentional; (b) Mercantile's violation, if any, was bona fide; and (3) Mercantile maintains procedures reasonably adapted to avoid such errors. Though plaintiff attempts to persuade the Court with unsupported allegations and argument that "general procedures" are not sufficient to establish the *bona fide* error defense, there is no dispute that Mercantile employs policies and procedures to ensure compliance with the FDCPA, and it brought those procedures to bear in this case.

For instance, Mercantile has a system in place to prevent violative calls to accounts outside the hours prescribed by the FDCPA. (*See* Dellamea Decl. at ¶5.) Mercantile employees undergo training to ensure compliance and those individuals are monitored continuously. (*See id.* at ¶7.) Mercantile's efforts to vigilantly document all

---

[2] As noted in its moving papers (Doc. 13 at 21 fn. 8), discovery has closed. Plaintiff failed to depose any Mercantile representative or identify any expert witness. Thus, plaintiff has no basis on which to dispute the applicability and merit of Mercantile's *bona fide* error defense.

2

communications with a debtor, to guarantee those communications are made within permissible hours, and to make sure they comply with all requirements of the FDCPA are more then sufficient to establish Mercantile is entitled to the bona fide error defense in this case.  Indeed, plaintiff claims that Mercantile "does not offer a scintilla of evidence to support its assertion that it reasonably adapted specific procedures to avoid any errors it might have made in this case."  But nothing could be further from the truth.  Mercantile has put forth the wholly uncontested declaration of its CEO, Lance Dellamea. In each instance, Mr. Dellamea has explained the company's practice and procedure, and then related those practices and procedures to the facts of this case.  For instance,

> 4.     Mercantile utilizes and maintains computer telephony software to detail collection account activities. (*See* a true and accurate copy of the Mercantile Call Log and Call Notes, attached as composite Ex. B.)  Mercantile also documented each of plaintiff's communications to Mercantile.  (*See* true and accurate copy of Mercantile Call Data Recorder Query, attached at Ex. C.)  At all relevant times, Mercantile used Paetec as its telephone call system vendor for 1-800 communications.  According to Paetec's records relevant to this case,  two calls that plaintiff complains about on May 9, 2010, at 12:06 a.m. and 12:07 a.m were made by plaintiff to Mercantile, not *vice versa*. (*See* true and accurate copy of Paetec Call Log, attached as Ex. D.)   Mercantile's Call Data Recorder Query, which identifies all calls by plaintiff to Mercantile, is consistent with Paetec's record as it notes calls by plaintiff to Mercantile at 12:11 a.m. and 12:12 am.  (*See* Mercantile Call Data Recorder Query, attached. at Ex. C.)  The slight variation in the recorded times arises from the fact that the time recordation software is not synchronized precisely across all systems.
>
> 5.     Mercantile has system controls in place that prevent accounts from being called outside the hours of 8:00 a.m. and 9:00 p.m.  There is a setting in its caller software for this purpose.  This a common practice in the collections industry.

3

6. Mercantile also routinely sends the collection notices required under FDCPA Section 1692g to debtors. Mercantile sent two of those letters to the plaintiff in this case. (*See* April 22, and May 19, 2010, Notice of Debt Letters, attached at Exs. E and F, respectively.) All of the records described herein collectively serve as Mercantile's institutional memory for its collection activities, and all such records are kept in the ordinary course of business for Mercantile.

7. Mercantile also maintains procedures for its collection activities. Those procedures are reasonably adapted to avoid error in compliance with the FDCPA. Mercantile provides training for its communications with debtors generally. Mercantile employees go through a training process that includes review of the FDCPA and taking a "knowledge based" test on the FDCPA. Each collector must pass this test before the collector can begin working with an experienced collector, listening in on calls, and eventually answering calls and making calls. Each collector takes this test on a six month basis thereafter. The collectors are monitored by a combination of their trainer, their peers, supervisor and/or other management personnel. Additionally, the collectors are audited real time sporadically and unbeknownst to them by a supervisor when they are making calls on a random basis. One key component of the training is institutionalization of a "mini-Miranda" summary that every collector gives debtors at the time of initial contact. Additionally, messages left on voicemails are standardized, usually generated automatically, and identify Mercantile as such. Any complaints are documented, investigated and reviewed.

Through plaintiff's failure to rebut any of this evidence and extended, but unnecessary, discussion of case law on the issue, the facts remain relatively simple and clear: (1) Mercantile maintained procedures reasonably adapted to avoid any such error, and (2) even if any such error occurred, it was unintentional. Specifically, "[w]ith respect to plaintiff's case. . .Based on a review of Mercantile's account information, including the Call Log, Call Data Query Reporter, and Call Notes, there was no call outside the time frame of 8:00 a.m. to 9:00 p.m. to plaintiff. Indeed, this would have been impossible

4

absent a catastrophic failure of Mercantile's internal software check on calls outside those hours, which did not occur. Moreover, [Mr. Dellamea] . . . . confirmed that no one advised plaintiff that Mercantile was known as "Urban Title Adjustment Center." To the contrary, in all communications to plaintiff, Mercantile has identified itself as Mercantile." (*See* Dellamea Decl. at ¶8.) Plaintiff's attempts to create fact issues to support an alleged misrepresentation about "Bank of Moran" as opposed to "Bank of Marin" and "Urban Title Adjustment Bureau" as opposed to "Mercantile Adjustment Bureau" actually underscore the nature of any alleged violation as unintentional. The *bona fide* error defense is applicable here, and it bars plaintiff's claims.

### B. The Least Sophisticated Debtor Standard is a Reasonable Standard.

Here, plaintiff misapplies the least sophisticated debtor standard in a way that purports to shift burdens of proof and persuasion onto Mercantile and attempts to create fact issues where none exist. This misapplication is most apparent in the way that plaintiff attempts to manufacture fact issues from speculation, conjecture, and interpretation, wherever he lacks concrete evidence, and by reliance on the call memorandum that plaintiff generated for purposes of this litigation. While plaintiff couches this legal standard as "extremely broad," he noticeably omits the fact that debtors as well as debt collectors are protected by the Fair Debt Collection Practices Act ("FDCPA"). The standard is based upon the premise that a debt collector's communications with a debtor are viewed under a reasonableness standard. The standard "'**prevents liability for bizarre or idiosyncratic interpretations** of collection notices by preserving **a quotient of reasonableness** and presuming a basic level of understanding and willingness to read with care." *Hartman v. Great Seneca Fin. Corp.*,

5

569 F.3d 606, 612 (citing *Barany-Snyder v. Weiner*, 539 F.3d 327, 332-33 (6th Cir. 2008) (Emphasis added.) Here, a reasonable review of all the evidence before the Court leaves no doubt Mercantile acted within the confines of the FDCPA and that plaintiff's claims fail as a matter of law.

> **C. No Genuine Issue of Fact Exists That Mercantile's Conduct in Attempting to Collect Plaintiff's Debt Did Not Violate the FDCPA.**
>
> **1. Plaintiff's self-serving call summary for litigation does not establish a material issue of fact concerning Mercantile's alleged violation of FDCPA section 1692c(a)(1).**

Plaintiff's handwritten Call Summary for Litigation does not establish a material issue of fact that Mercantile violated 15 U.S.C § 1692c(a)(1). Contrary to plaintiff's erroneous interpretation, the Court's reasoning in *Amadasu v. General Revenue Corp.*, 2007 WL 4800349 (S.D. Ohio 2007), is instructive. Plaintiff argues that the *Amadasu* court's decision granting summary judgment in favor of a debt collector was based upon the fact that the *pro se* plaintiff forged documents. However, even a cursory review of *Amadasu* shows that the "undisputed evidence" relied on by the Court was the debt collector's call logs. This is the case here as well. The undisputed evidence demonstrates that Mercantile's databases recorded the communications between the debtor and collector. Plaintiff has not presented any evidence to dispute those facts regarding Mercantile's conduct except for his self-serving Call Summary, which admittedly contains mistakes.[3] Indeed, plaintiff claims that his testimony, utterly without

---

[3] Notably, plaintiff's flawed interpretation of the *Amadasu* case is further evidenced by his citation to the trial court's *adoption* of the Magistrate's decision in *Amadasu v. General Revenue Corp.*, 2008 WL 207936 (S.D. Ohio 2008). Plaintiff's erroneous citations do not undermine the court's finding that "[p]plaintiff's self-serving declaration [of call logs] lacked credibility 'in the wake of the overwhelming and wholly credible testimony and documentary evidence presented by defendant's witnesses [in the form of the debt collector's call logs].'" *Amadasu*, 2008 WL 207936 at *2.

6

foundation, that Mercantile's programming had "mechanical glitches" or that "somebody may have 'rigged' the database" is representative of the entirely speculative nature of his testimony. The notion that *if* there was mechanical glitch, or *if* someone "rigged it" is meaningless and does not bolster plaintiff's self-serving Call Summary or his unfounded interpretation of Mercantile's records. As in *Amadasu*, plaintiff in this case cannot demonstrate a material issue of fact based upon a self-serving call log generated for purposes of litigation.

Plaintiff also mistakenly relies on *Sowers v. Wakefield & Assoc.*, 2010 WL 3872901 (D.Co. 2010), a Colorado district court holding that is not authoritative and is distinguishable from the case at issue. In *Sowers*, the court found plaintiff's uncontroverted self-serving testimony that a debt collector contacted her at violative times created a material issue of fact. However, in *Sowers*, there was no evidence, such as the debt collector's call logs or plaintiff's cell phone records that the debt collector communicated with the plaintiff only during permissible hours. Here, it is undisputed that both plaintiff's T-Mobile Cell Phone Records and Mercantile's Outbound Call Log and Call Notes show no calls were made to plaintiff outside the hours prescribed by 15 USC § 1692c(a)(1). Unlike *Sowers*, no reasonable juror could infer a call was made to plaintiff by Mercantile outside permissible hours, because both plaintiff's own T-Mobile and Mercantile's call logs corroborate this fact.

Further, plaintiff's reliance on the case of *U.S. v. Hoskins*, 628 F.2d 295 (5th Cir. 1980), is not well-founded as it concerns a criminal conviction. The Court in *Hoskins* correctly observed that "for testimony to be held incredible as a matter of law it must relate to facts that the witness could not possibly have observed, or events which could

7

not have occurred under the law of nature." *Id.* at 297.  Again, both plaintiff's T-Mobile records and Mercantile's call logs show the improbability that a call could have occurred outside the time allowed under §1692c(a)(1) but was not recorded by *either* plaintiff's or Mercantile's telephone providers.  As a result, Mercantile's Summary Judgment Motion should be granted, because as a matter of law it is impossible for plaintiff to demonstrate that a violative call was made to him that was not recorded by either plaintiff's telephone provider or Mercantile's call logs.

> **2. Courts have held that a debt collector's unanswered phone calls to a debtor do not create an issue regarding harassment and the question is not one for a jury in this case.**

The placement of phone calls by a debt collector in an attempt to collect a debt does not establish a genuine issue of fact concerning harassment regardless of whether the phone call is answered or not.  Plaintiff argues that Mercantile's alleged failure to leave a message on plaintiff's answering machine gives rise to a violation of 15 U.S.C. § 1692d(5).  However, as explained below, plaintiff fails to bring to the Court's attention numerous court decisions that have held that a debt collector's mere attempts to collect a debt owed without evidence of threats or oppressive behavior is not harassment.

> **a. Mercantile's alleged failure to leave a message on plaintiff's answering machine does not create a question of fact for violation of FDCPA section 1692d(5).**

Plaintiff once again mischaracterizes the law by arguing that an unpublished decision from the Eleventh Circuit, *Meadows v. Franklin Collection Serv., Inc.*, 2011 WL 479997 (11th Cir. 2011), is the only circuit decision dealing with violations of the FDCPA regarding unanswered phone calls.  *Meadows*, however, is distinguishable from the present case.   Plaintiff argues *Meadows* stands for the proposition that unanswered

8

calls from a debt collector are relevant when determining whether an issue of fact exists regarding a violation of 15 U.S.C. §§1592d and/or 1592d (5). Plaintiff once again misconstrues the basis for the holding cited.

The *Meadows* court came to its decision based in large part on the fact that the debt was not owed by the plaintiff, but by her daughter and former holders of the plaintiff's telephone number. *Id.* at *3 (calls were made over a "period of time and **concern[ed] debts that [plaintiff] did not owe**"); *see also Carman v. The CBE Group, Inc.*, 2011 U.S. Dist. LEXIS 29730 (D. Kan. 2011) (distinguishing holding in *Meadows* based on facts that "defendant did not cease calling, despite plaintiff informing it that **she did not owe the debt and that the debtors did not live with her**.") Additionally, the debt collector in *Meadows* used an automatic telephone dialer making human interaction or the ability to leave messages impossible. *Id.* at *2. To the contrary, Mercantile contacted plaintiff regarding a debt it understood that he owed to a bank that backed a credit card account. Mercantile employed live individuals to make the calls, and plaintiff was able to speak with them during business hours.

Moreover, the Eleventh Circuit is not the only court to address unanswered calls by debt collectors. In *Udell v. Kansas Counselors, Inc.*, 313 F.Supp.2d 1135 (D. Kan. 2004), the Court reasoned that "[s]ection 1692d(6) does not, when read in isolation, specify whether a debt collector who calls a consumer must leave a message when the consumer does not answer the call. **When this provision, however, is read in conjunction with the entirety of § 1692d, it is clear that not leaving a message is not the type of harassing, oppressive, or abusive conduct that violates the statute.**" *Id.* at 1143 (Emphasis added.) Here the court found that a debt collector's four calls over a

9

week span without leaving a message did not violate the FDCPA as it did not "fall within the realm of the other types of egregious conduct specifically prohibited by § 1692d…[and] requiring a debt collector to leave such messages could lead to other unnecessary violations of the FDCPA." *Id.* at 1143-1144; *see also Carman v. The CBE Group, Inc*., supra; *Waite v. Fin. Recovery Serv., Inc.*, 2010 U.S. Dist. LEXIS 133438 (M.D. Fla. 2010) (citing *Saltzman v. I.C. Sys., Inc.*, No. 09-10096, 2009 U.S. Dist. LEXIS 90681, 2009 WL 3190359, at * 7 (E.D. Mich. Sept. 30, 2009) (Emphasis added) (**"[A] debt collector does not necessarily engage in harassment by placing one or two unanswered calls a day in an unsuccessful effort to reach the debtor, if this effort is unaccompanied by any oppressive conduct such as threatening messages**"); *Pugliese v. Professional Recovery Serv., Inc.*, Case No. 09-12262 (E.D. Mich. 2010); *Obenauf v. Frontier Fin. Group, Inc.*, (D. New Mexico 2011) No. CIV 11-0085; *Katz v. Capital One, et al.* (E.D. Va. 2010), No. 1:09cv1059. Here, plaintiff cannot demonstrate that Mercantile's decision not to leave a message was otherwise accompanied by harassing conduct and the mere fact the Mercantile allegedly called plaintiff attempting to collect a debt without leaving a message is not enough to sustain a claim for violations of §§1692d and 1692d(5).

          **b.    The issue of whether the nature and frequency of a debt collector's communications is harassment is not a jury question in this case.**

Plaintiff cannot demonstrate that Mercantile's communications were harassing. As a result, plaintiff attempts to argue that Mercantile's contacts were harassing based on the mere fact that they were attempting to collect a debt. This fact is insufficient to create a genuine issue. It is well-recognized that "[a]ny attempt to collect a defaulted debt will be unwanted by a debtor…" *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330 (6th

Cir. 2006); *see also Pugliese v. Professional Recovery Serv., Inc.*, Case No. 09-12262 (E.D. Mich. 2010) (citing to *Martin v. Select Portfolio Serving Holding Corp.*, 2008 WL 618788, \*\*6-7 (S.D. Ohio, March 3, 2008) ("a log of numerous collection calls is not evidence of intent to annoy, abuse, or harass. 'any call from a debt collector may be presumed unwelcome, but that alone is insufficient to constitute a violation of the FDCPA.'") Plaintiff has not shown that Mercantile's call volume, of no more then two calls a day was harassing. Further, all the reliable evidence before the Court demonstrates that plaintiff was only called during permissible hours. (*See* Plf's T-Mobile Cell Phone Records; *see also* Mercantile's Outbound Call Log and Call Notes.)

Additionally, the Sixth Circuit recognizes instances wherein summary judgment regarding a debt collector's alleged harassment is appropriate. "'[W]hether conduct harasses, oppresses, or abuses will [ordinarily] be a question for the jury, … [however] Congress has indicated its desire for the courts to structure the confines of § 1692d…Courts have therefore dismissed claims filed pursuant to § 1692d as a matter of law if the fact alleged do not have the natural consequence of harassing or abusing a debtor." *Harvey*, supra at 330 (internal citation omitted.) Here, plaintiff has not alleged Mercantile threatened him in anyway regarding the debt, only that it attempted to collect a debt he did not recognize or, as explained below, that it failed to leave a message. That is insufficient to sustain a claim for harassment.

> **3. Mercantile has no right under the FDCPA to leave a message on plaintiff's answering machine and failure to do so does not equate to a violation of FDCPA section 1692d(6) and 1692e(10).**

Plaintiff argues that Mercantile violated 15 U.S.C. §§1692d(6) and 1692e(10) by allegedly failing to leave a voicemail message for plaintiff when it attempted to collected

11

plaintiff's debt.  Mercantile's failure to leave a voicemail message does not constitute a deceptive act and plaintiff has admitted that Mercantile properly disclosed itself in its communications.  (*See* Plf's Dep. at 67:1-7).  Further, all Mercantile's written communications with plaintiff properly identify Mercantile.  (*See* Plf's Dep. 75:11-13; 80:11-13; see also April 22, 2010, Notice of Debt Letter, and May 19, 2010, Second Notice of Debt Letter.)

A debt collector has no established right under the FDCPA to leave messages for a debtor.  *Edwards v. Niagara Credit Solutions, Inc.*, 584 F. 3d 1350, 1354 (11th Circuit 2009) ("the Act does not guarantee a debt collector the right to leave answering machine messages.")  As a result, "[i]f a debt collector has no right to leave a message, then it follows that there can be no requirement that a message be left for a debtor, and no case or statute holds otherwise."  *Carman v. The KBE Group*, 2011 U.S. Dist. LEXIS 29730 at *27.  Without more, plaintiff's contention that he was harassed by Mercantile's failure to leave a message does not give rise to a claim under either §1692d(6) or 1692e(10).  .

### 4. There is no genuine issue of fact that Mercantile did not violate FDCPA section 1692e(14)

Mercantile properly disclosed itself in all communications with plaintiff.  It is uncontroverted that all written communications from Mercantile identify Mercantile by its proper name "Mercantile Adjustment Bureau".  (*See* Plf's Dep. 75:11-13; 80:11-13; *see also* April 22, 2010, Notice of Debt Letter, and May 19, 2010, Second Notice of Debt Letter.)  Further, plaintiff admits that Mercantile's representative informed him they were not related to "Urban Title."  (Plf's Dep. at 67:5-7).  In fact, though plaintiff argues his self-serving call log evidences Mercantile identified itself as "Urban Title," Plaintiff himself has admitted he wrote the name "Urban Title" on his call log when neither

12

Mercantile nor plaintiff's caller id identified Mercantile as "Urban Title." Specifically:

> Q: So you have the next entry [on Plaintiff's Call Summary for Litigation] after, "Jessica," it says 5.5, 5:30 a.m., Urban Title Adjustment Center." Did you communicate with someone and they –
>
> A. **No.** That came on on [sic] my caller ID.
> Q. It said, "Urban Title Adjustment Center"?
> A. **No.** It was the 1-800 number, the 1-866-716-1545.

(Plf's Dep. 94:8-13) (Emphasis Added.) Thus, plaintiff transposed the representation of "Urban Title Adjustment Center" in his mind to his Call Summary for Litigation. Despite the fact that Plaintiff intends to use his "contemporaneous" call logs as evidence, plaintiff has admitted his Call Summary for Litigation misrepresents Mercantile's representations to him. As a result, plaintiff's misnomer in hearing "Mercantile" as "Urban Title" does not rise to a violation of the FDCPA. Plaintiff also claims that Mercantile failed to address whether, like all of its written communications, all its oral communications with plaintiff were compliant with 1692(e)(14). However, this is not accurate either. The uncontested declaration of Mercantile's CEO specifically provides that "no one advised plaintiff that Mercantile was known as "Urban Title Adjustment Center. To the contrary, *in all communications to* plaintiff, Mercantile has identified itself as Mercantile." Dellamea Decl. at 8.

### 5. Plaintiff's T-Mobile cell phone records and Mercantile's Outbound Call Log and Call Notes show plaintiff was only contacted by Mercantile during permissible hours.

There is no discrepancy in Mercantile's Outbound Call Log and Call Notes. Plaintiff cannot dispute the fact that both Mercantile's records and plaintiff's own T-Mobile Cell Phone Records are clear and consistent: Mercantile did not place any violative calls to plaintiff at any time. The evidence before the Court demonstrates that it is only plaintiff's handwritten Call Summary for Litigation that records any call outside

13

permissible hours, and those calls cannot be substantiated by plaintiff's own cell phone provider. *See Amadasu v. General Revenue Corp.*, *supra*. Thus, no issue of material fact exists and Mercantile's Summary Judgment Motion should be granted.

> **D. Mercantile's requests for admission were properly served to plaintiff and have been admitted by operation of law.**

Plaintiff argues Mercantile is not entitled to summary judgment regarding §1692d(6) because Mercantile's Requests for Admissions were not properly served. However, plaintiff provides neither facts nor argument to suggest that he was not served and in possession of the requests for admission since they were first served by electronic mail on January 11, 2011, The record evidence demonstrates that all communications between the parties have been through e-mail, and this has occurred by mutual consent. While plaintiff would like the Court to decide the dispute on the technical requirements of Civil Rule 5, the fact is that plaintiff failed to update its address in violation of this Court's rules and the course of dealing of the parties through the litigation has occurred by electronic means Mercantile would have delivered the requests for admission to plaintiff at its new office address if it had been in possession of that information as of January 11, 2011. Instead, however, only the electronic transmittal reached plaintiff's counsel. Even after this event, plaintiff served overdue discovery responses by e-mail. Plaintiff cannot have it both ways and is complaining about a situation that its conduct, failure to update its address, caused. Further, even the Court's docket reflects the fact that plaintiff's counsel failed to update his address with the Court as required by the civil and local rules. Plaintiff did not timely respond to the request for admission or seek juridical relief with respect to same, and as a result they were deemed admitted by operation of law even before the March 9 telephonic conference.

## II. CONCLUSION

For all the foregoing reasons, Mercantile respectfully requests that summary judgment be entered in its favor on all claims asserted against it, and dismissing plaintiffs' Complaint with prejudice. Plaintiff has failed to refute any of the evidence offered by Mercantile; indeed, with regard to Mercantile's *bona fide* error defense and Mr. Dellamea's declaration, plaintiff simply cannot refute the record evidence. And Mercantile is thus entitled to summary judgment based on the *bona fide* error defense . Even if it were not, Mercantile is entitled to summary judgment on plaintiff's claims that it called plaintiff at inconvenient times, failed to leave messages, and failed to disclose its identity, because the only evidence put forth by plaintiff is his self-serving Call Summary for Litigation, which as explained infra, is not sufficient to create a material issue of fact.

### LOCAL RULE 7.1 CERTIFICATION

This case was assigned to the standard track. I certify that the foregoing Memorandum adheres to the page limitation set forth in Local R. 7.1.

Respectfully submitted,

/s/ Paul J. Cosgrove
Paul J. Cosgrove (0073160)
Jesse R. Lipcius (0078274)
Ulmer & Berne LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio  45202
Tel:  (513) 698-5034
Fax:  (513) 698-5035
E-mail:pcosgrove@ulmer.com
         jlipcius@ulmer.com
*Attorneys for Defendant,*
*Mercantile Adjustment Bureau, LLC*

## **CERTIFICATE OF SERVICE**

      A true copy of the foregoing was served via the Court's ECF system on June 20, 2011.  All parties can access this filing through the ECF system.

                                                  /s/  Paul J. Cosgrove
                                                  One of the Attorneys for Defendant,
                                                  Mercantile Adjustment Bureau, LLC

772181v1