**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


Eric Kaegi,                                       )        CASE NO. 1:10 CV 2282
                                                  )
                          Plaintiff,              )        JUDGE PATRICIA A. GAUGHAN
                                                  )
             vs.                                  )
                                                  )
Mercantile Adjustment Bureau, LLC,                )        <u>Memorandum of Opinion and Order</u>
                                                  )
                          Defendant.              )


   <u>Introduction</u>

   This matter is before the Court upon defendant Mercantile Adjustment Bureau, LLC's

Motion for Summary Judgment (Doc. 11).  This case alleges violations of the federal Fair

Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*  For the following reasons,

the motion is GRANTED.

   <u>Facts</u>

   Plaintiff, Eric Kaegi, filed this Complaint against defendant, Mercantile Adjustment

Bureau, LLC., setting forth one claim for relief.  Plaintiff alleges that defendant violated the

FDCPA in the following manner:

1

(i) defendant contacted plaintiff before 8:00 a.m. and after 9:00 p.m. in violation of §1692c(a)(1).

(ii) defendant engaged in conduct the natural consequence of which is to harass, oppress, or abuse the plaintiff in connection with the collection of a debt by causing a telephone to ring repeatedly and continuously with the intent to annoy, abuse, and harass in violation of §1692d(5) and placing telephone calls without meaningful disclosure of the caller's identity because defendant calls plaintiff and sometimes calls itself Urban Title Adjustment Center in violation of §1692d(6).

(iii) defendant used deceptive means in an attempt to collect a debt by calling plaintiff and hanging up without leaving a voicemail message and failing to disclose in subsequent communications that the communication was from a debt collector in violation of §1692e(10).

(iv) defendant used a business name other than the true name of the debt collector's business because defendant calls plaintiff and states that the call is from Urban Title Adjustment Center, not Mercantile Adjustment Bureau, which is the true name of the company in violation of §1692e(14).

(v) defendant failed to provide appropriate notice of the debt within 5 days after the initial communication including: (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within 30 days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the 30-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the 30-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor in violation of §1692g(a)(1-5).

Plaintiff[1] is an individual residing in Garfield Heights, Ohio. Lance Dellamea,

defendant's Chief Operating Officer, states the following.  Defendant is an accounts

receivable management firm specializing in third-party contingency collection services.

Defendant was retained to recover an amount allegedly due and owing by plaintiff on a

---

[1]     Plaintiff previously filed bankruptcy petitions in 1997 and 2005, discharging personal debt.  (pltf. depo. 7-10, 30-31)

consumer credit card in plaintiff's name. Based on a review of the account notes, Security

Credit Services assigned the account to defendant for collection efforts. It appears from the

financial information in defendant's system that the original account was backed by Bank of

Marin, which became Credit One Bank, N.A. The original account may have been identified

with any number of retailers or other commercial entities. Security Credit Services acquired

the debt from Credit One Bank, N.A. Defendant relies on the accuracy of debtor account

information it receives from the original creditor on the accounts. (Dellamea decl.)

Plaintiff received an initial communication from defendant to his cell phone voice

mail on April 21, 2010.  (pltf. depo. 73, 74; Dellamea decl. Exs.)  By letter from defendant

dated April 22, 2010, addressed to plaintiff at his Garfield Heights address, defendant notified

plaintiff as follows:

> Your account with CREDIT ONE BANK, N.A., has been listed with our office for
> collection. The balance due is $627.55. If you don't agree with the balance it is
> important that you contact our office to discuss this matter.
>
> Please be advised that our client has authorized us to offer you substantial savings to
> settle this account. We will accept $225.92 if payment is received by 05-28-10.
> Contact our office for more information.
>
> * * *
>
> THIS COMMUNICATION IS FROM A DEBT COLLECTOR.. THIS IS AN
> ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE
> USED FOR THAT PURPOSE.
>
>
> Unless you notify this office within 30 days after receiving this notice that you dispute
> the validity of the debt or any portion thereof, this office will assume the debt is valid.
> If you notify this office in writing within 30 days of receiving this notice that the debt
> or any portion thereof is disputed, this office will: obtain verification of the debt or
> obtain a copy of a judgment and mail you a copy of such judgment or verification. If
> you request this
> office in writing within 30 days after receiving this notice, this office will provide you

with the name and address of the original creditor, if different from the current creditor.

(Dellamea decl. Ex. E)  Plaintiff testified that he never received this communication, although he acknowledged that it was addressed to his proper address.  Plaintiff surmised that it was lost in the mail.  (pltf. depo. 76-80)

A second letter, identical to the first but dated May 19, 2010, was sent to plaintiff at the same address by defendant.  (Dellamea decl. Ex. F)  Plaintiff testified that he received this letter, but did not dispute the debt or request verification of the debt in writing from defendant because he had contacted an attorney at that point. (pltf. depo. 80-82) Further facts will be discussed below which are relevant to each of plaintiff's claimed violations of the FDCPA.

This matter is now before the Court upon defendant Mercantile Adjustment Bureau, LLC's Motion for Summary Judgment.

**<u>Standard of Review</u>**[2]

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

---

[2]      The Court notes that this Motion for Summary Judgment was filed in May 2011 and, thus, is subject to application of the recent revision of Fed.R.Civ.P. 56, effective December 1, 2010. The advisory comments concerning the 2010 amendments clearly state, however, that the "standard for granting summary judgment remains unchanged."

> [A] party seeking summary judgment always bears the initial
> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with affidavits," if any, which it believes demonstrates
> the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution will affect the outcome of the lawsuit."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party.  Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported
> as provided in this rule, an adverse party may not rest upon the
> mere allegations or denials of [his] pleadings, but [his
> response], by affidavits or as otherwise provided in this rule,
> must set forth specific facts showing that there is genuine issue
> for trial.  If he does not respond, summary judgment, if
> appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985).  However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury."  *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be

evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57

F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the

evidence is "merely colorable" and not "significantly probative," the court may decide the

legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

Plaintiff has alleged the following violations of the FDCPA.  Defendant argues that

summary judgment is proper as to each claim.[3]

**(1) defendant contacted plaintiff before 8:00 a.m. and after 9:00 p.m. in violation of §1692c(a)(1)**

15 U.S.C. § 1692c(a)(1) of the FDCPA states that:

**(a) Communication with the consumer generally**
Without the prior consent of the consumer given directly to
the debt collector or the express permission of a court of
competent jurisdiction, a debt collector may not

---

[3]     Defendant alternatively argues that the *bona fide* error defense protects it against
all of plaintiff's claims given that (1) the violation was unintentional; (2) the
violation was a result of a bona fide error; and (3) the debt collector maintained
procedures reasonably adapted to avoid any such error.  15 U.S.C. § 1692k(c) The
Court need not reach this issue.  But, if it did, plaintiff has failed to dispute
defendant's evidence in this regard as it has not deposed a representative of
defendant or offered an opinion of an expert. Defendant submits the declaration of
Lance Dellamea, its Chief Operating Officer, who states that defendant has
reasonable policies and procedures in place to ensure that the violations do not
occur.  Dellamea specifically sets forth defendant's procedures and controls, and
relates those practices to the facts of this case. Plaintiff responds by arguing
(without evidence) that defendant has only general procedures in place, and that
there is no evidence that it reasonably adapted specific procedures to avoid the
errors here.  In particular, plaintiff maintains that defendant has provided no
evidence to show what steps are taken to ensure that its telephone number does
not appear as Urban Title Adjustment Center, or that its telephone system cannot
be manipulated to call outside normal business hours.  Plaintiff's conjectures are
insufficient to overcome the evidence provided by defendant.

communicate with a consumer in connection with the
collection of any debt-

> (1) at any unusual time or place or a time or place known or which should be
> known to be inconvenient to the consumer. In the absence
> of knowledge of circumstances to the contrary, a debt
> collector shall assume that the convenient time for
> communicating with a consumer is after 8 o'clock
> antemeridian and before 9 o'clock postmeridian, local time
> at the consumer's location…

Plaintiff's Complaint alleges defendant contacted him before 8:00 a.m. and after 9:00 p.m. by calling plaintiff on May 5, 2010 at 5:30 a.m., May 9, 2010 at 12:00 a.m., May 9, 2010 at 11:51 p.m., and May 10, 2010 at 2:00 a.m.  Defendant argues that plaintiff has no reliable, credible evidence that defendant contacted him at these times. For the following reasons, this Court agrees.

Plaintiff prepared a handwritten document which will be referred to as plaintiff's call log. (Doc. 13 Ex. D; Cosgrove decl. Ex. D)  Plaintiff testified,

Q.  Now, tell me how it is that this note came to be generated.

A.  I started recording phone calls and names and numbers for my protection in case I had to file a suit.

(pltf. depo. 90) Plaintiff testified that he called a law firm and spoke with a paralegal named Jessica, and then he started recording.  (pltf. depo. 90, 92-93)[4]

Plaintiff's call log contains the following pertinent notations which plaintiff believes support his allegation that defendant called him before 8:00 a.m. and after 9:00 p.m.:

5.5        5:30 AM Urban Title Adjustment Cntr.

---

[4]        Plaintiff testified that the call log was created contemporaneously with the phone calls received, although it has the appearance of being created at one point only.

7

       5.9       12:10 AM Urban Title Adjustment Cntr.

(Ex. D)

       Plaintiff states in his brief that the name listed on his phone's "caller i.d." appeared as Urban Title Adjustment Center with a telephone number of 866-716-1545.  (Doc. 13 at 3) Plaintiff refers to his deposition testimony, however, wherein he testified:

       A. ... That came on my caller ID.

       Q.  It said, "Urban Title Adjustment Center"?

       A.  No.  It was the 1-800 number, the 1-866-716-1545.

       Q.  So it didn't actually say Urban Title Adjustment Center?

       A.  That's what I put down, yes, for identification.  Because the first communications were by Urban...

(pltf. depo. 94)  The phone number identified by plaintiff, 866-716-1545, is defendant's toll free number.  (Dellamea decl. Ex.D)

       Plaintiff, nevertheless, admitted at deposition that these two calls were actually made by him:

       Q.  So do you see  ... your May 9 entry at 12:10 a.m.?

       A. Uh-huh.

       Q. And your entry does not specify whether the call was in or outbound.  But you would agree, as I think you may have already, that, in fact, this was a call from you to Mercantile, right?

       A. That's correct.

(pltf. depo. 105) Further,

       Q. ... your call identified at May 5 on your memo.  And you have written, "5:30 a.m., Urban Title Adjustment Center." But you have not specified whether it was in or

outbound.

A.  That's correct.

Q.  And we could not find that in your T-Mobile bill, right?

A.  It was the voice mail retrieval that I got.

Q.  There was no- - okay.  So it was not a call from Mercantile to you.  It was you retrieving your voice mail?

A.  After they called me.

Q.  But there's no call memorialized by your T-Mobile note or by Mercantile's outbound call log; is that correct?

A.  That's correct.

(*Id.* 106-107)

Plaintiff testified that in June 2010 he contacted his cellular service provider, T-Mobile, to request records in order to obtain evidence of violative calls. (pltf. depo.15-16; Cosgrove decl Ex. C; Doc. 13 Ex. E). The T-Mobile records, dated May 5, 2010 through May 10, 2010, do not reflect any calls to plaintiff by defendant outside permissible hours, i.e., before 8:00 a.m. and after 9:00 p.m. (Cosgrove Decl. Ex. C.).  These records do reflect, however, that plaintiff used his phone on May 9, 2010 at 12:03 a.m. and 11:51 p.m., and May 10, 2010 at 2:04 a.m. to retrieve his voice mail (*Id.*)  Plaintiff testified at deposition that he was retrieving a voice mail after receiving a call from defendant at 12:00 a.m. (pltf. depo. 88). When asked at deposition why the allegedly violative calls are not reflected in the T-Mobile records, plaintiff conceded that those incoming calls are not there and he testified that he did not know why.  (pltf. depo. 88-89)

9

Defendant submits its record of outgoing calls to plaintiff at his cell phone number[5]. (Dellamea Decl. Ex. B)  The record shows no calls to plaintiff outside the permissible hours. (*Id.*) Defendant also submits its record of calls made from plaintiff's cell phone number to defendant. (Dellamea Decl. Ex. C) This record of calls made by plaintiff to defendant shows two calls by plaintiff to defendant on May 9, 2010 at 12:11 a.m. and 12:12 a.m.  (*Id.*)

Dellamea, defendant's Chief Operating Officer, also declares that defendant uses a telephone call system vendor for 1-800 communications referred to as Paetec. Dellamea submits Paetec's records relevant to this case, which show that plaintiff made two calls on May 9, 2010, at 12:06 a.m. and 12:07 a.m to defendant.[6] (Dellamea Decl. Ex. D)

According to Dellamea, defendant also has system controls in place that prevent accounts from being called outside the hours of 8:00 a.m. and 9:00 p.m. There is a setting in its caller software for this purpose, which is a common practice in the collections industry. (Dellamea decl.)

Plaintiff points to *Sowers v. Wakefield & Associates,* 2010 WL 3872901 (D.Colo. Sept. 29, 2010), where the court found that plaintiff's deposition testimony that defendant called her at 6:02 a.m. created a genuine issue of material fact.  Plaintiff maintains that his deposition testimony and affidavit coupled with his call log creates a genuine issue of

---

[5] Plaintiff testified that his only phone is his cell phone.  That number is 216-926-8435.  (pltf. depo. 13) All outgoing calls referenced on defendant' call record are to this phone number.

[6] Dellamea declares that the "slight variation in the recorded times [between 12:06 a.m. and 12:07 a.m and 12:11 a.m. and 12:12 a.m.] arises from the fact that the time recordation software is not synchronized precisely across all systems."

material fact of whether defendant violated the statute.  This Court disagrees.

Plaintiff refers to an "affidavit" wherein he swears that defendant contacted him on May 5, 2010 at 5:30 a.m., May 9, 2010 at 12:00 a.m., May 9, 2010 at 11:51 p.m., and May 10, 2010 at 2:00 a.m.  (Doc. 13 at 9) The affidavit plaintiff refers to is apparently his declaration verifying his Complaint.  It is the Complaint which lists the four dates and times referred to in plaintiff's brief.  The declaration merely verifies that the Complaint is true to the best of plaintiff's knowledge.  (Doc. 1) The Sixth Circuit recognizes that a "verified complaint ... carries the same weight as would an affidavit for the purposes of summary judgment." *Totman v. Louisville Jefferson County Metro Government,* 391 Fed. Appx. 454 (6th Cir. 2010) (citations omitted).  Even aside from defendant's evidence, however, plaintiff's deposition testimony and his own T-Mobile records show that defendant did not make these calls.

In his opposition brief, plaintiff relies on specific portions of his deposition testimony in support of these four allegedly violative calls.  But, the first portion of deposition that he relies on only generally refers to "getting repeated phone calls" from defendant. (pltf. depo. 50)  The second portion of the deposition addresses plaintiff's T-Mobile records regarding the May 9 and 10 calls:

Q. Now, on May 9, 2010, you have a call at 12:03 a.m. Do you see that?

A. Yes.

Q. And you would agree that that's a call you affirmatively made to retrieve voice mail, correct?

A. That's correct, after I got called from Mercantile.

Q. Why is there no violative incoming call identified here, or is it possible that you were  calling Mercantile in response to some other call?

11

A. No. They called me at 12 o'clock. I was in bed.

Q. Then why isn't that call on here?

A. I don't know.

\*\*\*

Q. So we have another call here on May 9th, 2010 at 11:51 p.m. And again, you would agree that's you retrieving your voice mail, correct?

A. Yep. And that was after I got called by them again.

Q. But we don't have an incoming call reflected here, do we?

A. No, not yet.

Q. Okay. So then on May 10, 2010, we have reflected in the record another call by you at 2:04 a.m. to retrieve your voice mail, correct?

A. Uh-huh.

Q. And there's no corresponding inbound call from Mercantile, correct?

A. Not in this note.

(pltf. depo. 88-89).  Plaintiff wants the Court to accept his deposition testimony that he received the incoming calls which prompted him to retrieve his voice mail.  Based on this testimony, plaintiff believes an issue of fact survives as to whether defendant called him during the prohibited hours.  The objective evidence submitted, however, including plaintiff's own exhibits, shows that there is no evidence that defendant placed those calls.

Plaintiff also contends that his testimony that he received a call from defendant on May 9 is bolstered by other testimony that he remembered that call because it was received on the same day that a friend died. (pltf. depo.86) The Court is not required to make any such supposition in light of objective evidence to the contrary.

12

Plaintiff additionally maintains that his "affidavit" and deposition are supported by his handwritten call log.  Plaintiff asserts that the log identifies two violative calls: May 5 at 5:30 a.m. and May 9 at 12:10 a.m. from Urban Title Adjustment Center.  As discussed above, however, plaintiff admitted at deposition that these were calls he made.

Defendant argues that *Amadasu v. General Revenue Corporation,* 2007 WL 4800349 (S.D.Ohio March 29, 2007), is persuasive.  There, defendant moved for summary judgment on the basis that the statute of limitations barred plaintiff's FDCPA claims because there was no evidence that defendant had contact with plaintiff within the one year period preceding the filing of the complaint.  In response, plaintiff submitted his own diary record wherein he chronicled alleged phone contacts by defendant within the limitations period.  The court rejected this evidence on the basis that defendant's internal database which recorded all phone calls placed by collectors seeking to contact a debtor regarding collection of a debt showed that the last call made by defendant to plaintiff was outside the relevant period.  Plaintiff failed to present evidence disputing this evidence, or present any evidence disputing defendant's assertion that the system records all telephone calls made by a collector and all incoming calls with respect to a given account.  The court also noted that plaintiff's diary of contacts had previously been found by the court to contain references to letters supposedly sent by defendant which plaintiff had forged or altered.

Plaintiff herein attempts to distinguish *Amadasu* on the basis that there is no evidence that plaintiff has forged or altered any documents, and plaintiff has disputed defendant's record program.  With regard to the latter assertion, plaintiff points to his deposition testimony:

13

Q How, sir, do you explain the almost identical correlation between the calls to you and from you that are all within the permitted time periods and contain no misrepresentations?

A Mechanical glitches, somebody rigged the machinery.

(pltf. depo. 110) Thus, plaintiff contends, his testimony that defendant's programming had mechanical glitches or had been rigged shows that he has disputed the reliability of defendant's record program.  Plaintiff's conjecture is insufficient to constitute evidence disputing the reliability of defendant's records.

Plaintiff also asserts that he calls into question defendant's records by submitting his T-Mobile records which show that defendant called him on May 6, 2010 at 8:57 a.m. (Doc. 13 Ex. E) Plaintiff asserts that defendant's internal call log does not show that it made a call to plaintiff on that date, and that this shows that defendant's record program is incomplete and unreliable.  (Doc. 13 Ex. B) Plaintiff is mistaken.  The exhibit he relies on is not defendant's log of calls made to plaintiff, but rather the log of calls made by plaintiff to defendant. (Dellamea decl. Ex. C) This record of calls clearly shows that the "dialing number" is plaintiff's cell phone number (216-926-8435).  Instead, defendant's record of calls made by defendant to plaintiff does show a call made on May 6, 2010 at 8:57 a.m.  (Dellamea decl. Ex. B)

For these reasons, plaintiff fails to show a violation of 15 U.S.C. § 1692c(a)(1).

**(2) defendant engaged in conduct the natural consequence of which is to harass, oppress, or abuse the plaintiff in connection with the collection of a debt in violation of §1692d**

Plaintiff alleges violations of 15 U.S.C. §1692d(5) and (6) which provide,

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

14

Without limiting the general application of the foregoing, the following conduct is a violation of this section:

***

> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

**(a) §1692d(5)**

The Complaint alleges, "Defendant violated §1692d(5) of the FDCPA by causing a telephone to ring repeatedly and continuously with the intent to annoy, abuse, and harass Plaintiff.**"**

In his brief, plaintiff asserts the following.  Plaintiff states that defendant called him seven times per week for several months, and that he received an average of 14 collection calls from defendant every two weeks.  But, plaintiff points to his deposition testimony wherein he states, "... But I kept getting repeated phone calls, and -- I got a total of about, like, 14 calls in a two-week period. But every time I tried to call back, I couldn't get through." The testimony only refers to a period in April. (pltf. depo. 50) Thus, there is no evidence of repeated calls over several months.  Moreover, defendant's record of outgoing calls to plaintiff does not show repeated or continuous calls placed during single days or in frequent succession. Rather, it shows a call volume of one call per day on about 16 different days between April 19 and June 1, except for three calls on April 21 and two calls on May 21. (Dellamea Ex. B) In fact, plaintiff himself contacted T-Mobile, his cellular service provider, for records of violative calls.  Plaintiff fails to show evidence in these records of repeated or

15

continuous calls.

Relying on the earlier discussion regarding receiving calls during prohibited hours, plaintiff states again that he was called during inconvenient hours, such as 11:50 p.m., 12:00 a.m., 2:00 a.m., and 5:30 a.m.  As discussed above, however, plaintiff fails to show evidence that defendant contacted him during the prohibited hours.

Plaintiff points to his testimony that he filed a complaint with the Federal Trade Commission on May 10th by calling and reporting that he was receiving harassing late night and early morning phone calls from defendant. (pltf. depo. 85)   This testimony is insufficient to create an issue of fact as to whether plaintiff was receiving these calls.

Pointing to his personal call log, plaintiff asserts that he told defendant that he did not owe the debt, but defendant called and demanded payment four additional times.  One entry in plaintiff's call log records a conversation he had with a representative of defendant wherein plaintiff informed the representative that he never heard of the creditor:

> 5:18 [sic] 8:07 AM   Merc. called.  I called back at 8:11 AM spoke to Mike Rosa who asked me for my SSN and DOB which I wouldn't give.  He then confirmed my address.  Told me this Credit One Acct was from Bank of Moran which I told him I never heard of it.  Acct.  charged off [2007] $627.55 He wouldn't give me any info about the Bank of Moran.  Wanted a settlement of $225.92 he lied to me when he stated that Urban Title Adj. Cntr was not the same.  Even though they have the same phone number.  Told me they got the acct. from Security Credit Co. whom I've never heard of. He also couldn't give phone, address of Bank of Moran.

(Doc. 13 Ex. D) Nonetheless, as stated above, the evidence shows that plaintiff received a letter from defendant dated May 19, 2010 notifying plaintiff of the debt.  Plaintiff testified that he did not dispute the debt or request verification of it in writing as a result of this letter.  Thus, plaintiff's assertion that defendant contacted him after he informed defendant that he did not owe the debt is unavailing.  Rather, it appears from the evidence that after plaintiff

16

questioned the debt, defendant verified it.  Plaintiff did not thereafter dispute it.

For these reasons, plaintiff fails to show a violation of §1692d(5).

**(b) §1692d(6)**

The Complaint alleges that defendant violated §1692d(6) "by placing telephone calls without meaningful disclosure of the caller's identity because defendant calls plaintiff and sometimes calls itself Urban Title Adjustment Center."

In his brief, plaintiff states that defendant failed to meaningfully disclose the name of its company when it called plaintiff.  Plaintiff points to his deposition testimony:

> ... when I called a couple times, they identified themselves as Urban Title Adjustment Center and then identified themselves as Mercantile Adjustment Bureau.  And they both had the same 800 number.  And when I asked if they were related, the guy said no.

(pltf. depo. 38) The plaintiff also testified that defendant "lied to [him] also when they said they were not related to Urban Title Adjustment Bureau."  (*Id.* 67)

Plaintiff was questioned at deposition regarding his May 18 entry (set forth above) in his call log.  He agreed that no one was representing anything to him about Urban Title Adjustment Center.  (*Id.* 98) In plaintiff's May 21 entry, plaintiff wrote, "Urban Title Adjustment Cntr recording asked me to call back.  Called back at 5:48 pm.  Recording said office was closed and to call back during normal business hours.  Also recording identified itself as Mercantile Adjust. Bureau."  When questioned at deposition regarding this entry, plaintiff seemed to testify that he assumed the call was from Urban Title Adjustment Center because he associated that company with the phone number 1-866-716-1545.  (pltf. depo. 102-103) Plaintiff testified, however, that when he spoke with one of defendant's representatives, he denied being related to Urban Title Adjustment Bureau.  (pltf. depo. 67)

17

This is consistent with Lance Dellamea's declaration statements that "Mercantile has never been known, done business as, or otherwise identified itself as 'Urban Title Adjustment Center' " and "I spoke with the personnel handling this account, and confirmed that no one advised plaintiff that Mercantile was known as 'Urban Title Adjustment Center.' To the contrary, in all communications to plaintiff, Mercantile has identified itself as Mercantile." There is no credible evidence that defendant misrepresented itself as Urban Title Adjustment Center.

For these reasons, plaintiff fails to show a violation of §1692d(6).[7]

**(3) defendant used deceptive means in an attempt to collect a debt by calling plaintiff and hanging up without leaving a voicemail message and failing to disclose in subsequent communications that the communication was from a debt collector in violation of §1692e(10)**

This section prohibits the debt collector's "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Plaintiff asserts that defendant violated this section by calling plaintiff and hanging up without leaving a voicemail message.  (Doc. 13 at 20) Plaintiff points to his deposition testimony but the portions relied upon do not show that defendant hung up without leaving voicemail messages.  Plaintiff merely testified, "They misrepresented themselves on several occasions."  (pltf. depo. 38) And, when attempting to return phone calls, "The recordings wouldn't answer, and I couldn't get through."  (pltf. depo. 49) Plaintiff also points

---

[7]     Defendant asserts that summary judgment is warranted on this claim for the additional reason that plaintiff failed to respond to defendant's Requests for Admissions whereby plaintiff effectively admitted that defendant adequately identified itself on every occasion it contacted plaintiff. The Court need not reach this argument.

to his personal call log which records two calls on May 24 and May 26 from 1-866-716-1545, and notes that no messages were left. (Doc. 13 Ex. D) But, the call log, as well as plaintiff's own deposition testimony, show that plaintiff was informed by defendant on May 18 that defendant was attempting to collect a debt for Credit One Bank.  Defendant informed plaintiff in writing dated the next day (May 19) of this debt, and plaintiff admitted receiving this communication.

Moreover, Lance Dellamea's declaration shows that defendant's collectors give a "mini-Miranda" summary to debtors at the time of initial contact, and that messages left on voicemails are standardized, usually generated automatically, and identify Mercantile as such. (Dellamea decl.) Defendant's call notes appear to show that plaintiff was given such a "mini-Miranda" on April 21, 2010.  (*Id.* Ex. B)

For these reasons, plaintiff fails to show a violation of  §1692e(10).

**(4) defendant used a business name other than the true name of the debt collector's business because defendant calls plaintiff and states that the call is from Urban Title Adjustment Center, not Mercantile Adjustment Bureau, which is the true name of the company in violation of §1692e(14)**

Plaintiff bases this contention on his assertion that he identified Urban Title Adjustment Center with a phone number also used by defendant because when he was first contacted by this phone number, his "caller i.d." identified the call as coming from Urban.  As discussed above, however, plaintiff's deposition testimony does not clearly demonstrate this. (pltf. depo. 94) More likely, as defendant asserts, it appears that plaintiff misheard "Mercantile" as "Urban Title" and would thereafter record that name on his log when the phone number appeared on his cell phone.  Plaintiff did testify, "When I asked them about -- when I called a couple times, they identified themselves as Urban Title Adjustment Center

19

and then identified themselves as Mercantile Adjustment Bureau."  (pltf. depo. 38) But, plaintiff testified that when he asked a representative of defendant whether the two entities were related, the representative told plaintiff they were not.  (pltf. depo. 67) Further, it is undisputed that both written communications were clearly identified as coming from defendant.

For these reasons, plaintiff fails to show a violation of  §1692e(14).

**(5) defendant failed to provide appropriate notice of the debt within 5 days after the initial communication in violation of § 1692g(a)(1)-(5).**

Plaintiff has voluntarily withdrawn this claim.[8]  (Doc. 13 at 21)

**<u>Conclusion</u>**

For the foregoing reasons, defendant Mercantile Adjustment Bureau, LLC's Motion for Summary Judgment is granted.

IT IS SO ORDERED.



 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 7/12/11

---

[8]      In its reply, defendant request its attorneys' fees and costs associated with the briefing of this claim on the basis that the FDCPA allows such for actions brought in bad faith or for purposes of harassment.  In that defendant fails to show bad faith or harassment, the Court declines to award attorneys' fees and costs.

20